IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| METZLER CONTRACTING CO. LLC | ) | CIVIL NO. 07-00261 HG-LEK |
| and JOHN METZLER, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ELLE STEPHENS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'**
**MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**

Before the Court is Defendants Elle Stephens'
("Ms. Stephens") and Paul Stephens' ("Mr. Stephens")
(collectively "Defendants") Motion to Compel Arbitration and Stay
Litigation ("Motion"), filed on May 17, 2007.  This matter came
on for hearing on June 29, 2007.  Jerry Hiatt, Esq., appeared on
behalf of Plaintiffs Metzler Contracting Co., LLC ("MCC") and
John Metzler ("Metzler") (collectively "Plaintiffs") and Anna
Oshiro, Esq., appeared on behalf of Defendants.  After careful
consideration of the Motion, supporting and opposing memoranda,
and the arguments of counsel, this Court HEREBY GRANTS IN PART
AND DENIES IN PART Defendants' Motion for the reasons set forth
below.

**BACKGROUND**

This case arises out of a contract entered into by MCC
and Defendants on or around June 1, 2002, for the construction of

a 11,000+ square foot residence in the Kukio Resort in Kona, Hawai'i.  Work commenced in the fall of 2002 and stopped in November 2005 after Defendants refused to pay invoices.  Since that time, Plaintiffs learned that Defendants allegedly defamed them.

On April 25, 2007, Plaintiffs filed the instant action in the Circuit Court of the Third Circuit, State of Hawai'i, alleging that Defendants defamed them.  Defendants removed the case to the United States District Court for the District of Hawai'i on May 17, 2007.

On May 17, 2007, Defendants also filed the instant Motion to Compel Arbitration and Stay Litigation, seeking to compel binding arbitration of the claims alleged in the Complaint.  According to Defendants, Plaintiffs' allegations of defamation arise directly out of and are related to the contractual dispute between Plaintiffs and Defendants. Defendants assert that the following language in the contract mandates arbitration:

> Any claim arising out of or related to the Contract, except claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration.  Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.
>
> Claims not resolved by mediation shall be decided

2

>                 by arbitration which, unless the parties mutually
>                 agree otherwise, shall be in accordance with the
>                 Construction Industry Arbitration Rules of the
>                 American Arbitration Association currently in
>                 effect.  The demand for arbitration shall be filed
>                 in writing with the other party to the Contract
>                 and with the American Arbitration Association, and
>                 a copy shall be filed with the Architect.

[Mem in Supp. of Mot. at 3 (quoting Contract General Conditions at ¶¶ 4.6.1, 4.6.2, Ex. B).]  Under the contract, "claim" is defined in part as "other disputes and matters in question between the Owner and Contractor arising out of or relating to the Contract."  [Id. (quoting Ex. B at ¶ 4.3.1).]

Based on the foregoing language, Defendants argue that Plaintiffs' claims of defamation (i.e. impugning competence in the business of contracting, denigrating quality of work, accusations of financial mismanagement and fraud) relate to Defendants' performance of the contract.  Defendants note that arbitration currently taking place between the parties will determine whether they were competent in carrying out the construction contract and whether they engaged in financial mismanagement and fraud.  Emphasizing that the arbitration clause is broad because it encompasses disputes arising out of and relating to the contract, Defendants argue that Plaintiffs cannot avoid the clause by couching their claims in tort.  Defendants urge that any doubts regarding the scope of an arbitration provision should be resolved in favor of arbitration, pursuant to Hawai'i and Ninth Circuit law.

In additional support of their Motion, Defendants contend that Metzler is the "contractor," as the term is used in the agreement between the parties. "Contractor" is defined as the "Contractor or the Contractor's authorized representative." [Id. at 8 (quoting Ex. B. at ¶ 3.1.1).] Pursuant to the terms of the contract, Metzler is the contractor's representative. [Id. (citing Ex. B at ¶ 14.4[1]).] Defendants assert that consequently, Metzler is equally bound to submit his disputes to arbitration. According to Defendants, this is especially true in light of the fact that as the sole member/manager of his company, Metzler was an agent and owner of MCC and a beneficiary of the contract he signed.

Defendants lastly argue that the instant litigation should be stayed pending the resolution of Plaintiffs' claims in arbitration pursuant to Hawai'i Revised Statutes section 658A-7(g).

On June 8, 2007, Plaintiffs filed an Opposition to Defendants' Motion. Plaintiffs contend that the arbitration clause, when read in conjunction with the rest of the contract, clearly indicates that the dispute resolution provisions were intended only to apply to disputes involving performance or breach of the terms of the contract (i.e. construction defects,

---

[1] Exhibit A, not Exhibit B, includes a copy of the executed contract between the parties and in paragraph 14.4, Metzler is named as the contractor's representative.

4

defaults by owner regarding payments, adjustments in costs and time, injuries to persons or property arising from the construction).  To further support this position, Plaintiffs cite to the very language relied upon by Defendants, which states that "[a]ny claim arising out of or related to the Contract . . . shall, *after decision by the Architect* or 30 days after submission of the Claim to the Architect, be subject to arbitration."  [Ex. 1 to Opp'n at ¶ 4.6.1 (emphasis added).] Plaintiffs also cite paragraph 4.4.1, which provides that claims shall first be referred to the architect for decision.  Based on this language, Plaintiffs argue that submitting claims of defamation to an architect would make no sense and thus, an extension of the arbitration clause to a tort claim such as defamation would produce an absurd result.  Plaintiffs maintain that the contract language unambiguously precludes the application of the arbitration clause to their defamation claim. Even if the contract was ambiguous as related to the clause, however, they urge the Court to accept their interpretation under the "rule of reasonable construction."[2]

---

[2] "The rule provides that when the language of a contract is contradictory, obscure or ambiguous, or where its meaning is doubtful so that it is susceptible of two constructions, one of which makes it fair, customary and such as prudent persons would naturally execute, while the other makes it inequitable, unusual or such as reasonable persons would not be likely to enter into, the interpretation that makes it a rational and probable agreement must be preferred."  [Id. at 8 (citing Pancakes of

(continued...)

Plaintiffs further argue that Metzler is not a party to the contract individually and is therefore not bound by the arbitration clause.  They explain that he signed the contract in his role as MCC's managing member only, not as a personal party. In response to Defendants' contention that the provision defining "contractor" includes the "contractor's authorized representative," Plaintiffs submit that 1) Metzler is the contractor's representative, to be succeeded by Keith Wallis, an employee of MCC; 2) it is worded in the disjunctive (contains "*or*"), which necessarily means that the arbitration clause cannot bind both MCC and Metzler; 3) it is not intended to render the representative personally liable for the performance of the contractor, but rather to indicate that the contractor will be bound by the actions and representations of the representative; and 4) Hawai'i Revised Statutes section 428-303 provides that a member or manager of a LLC shall not be liable for the contractual obligations of the company.

On June 18, 2007, Defendants filed a Reply.  They first argue that defamation is a personal injury action which the term "claims" encompasses.  Defendants criticize Plaintiffs' argument that the scope of arbitration is limited to matters proper for an architect's review as a red herring that makes no sense.  They

---

[2](...continued)
<u>Hawaii, Inc. v. Pomare Props. Corp.</u>, 85 Hawai'i 286, 944 P.2d 83 (Haw. App. 1997).]

proffer that if an architect can decide personal property injury claims then he or she can decide a defamation claim.

Defendants next argue that the contract issues underlying both the pending arbitration and the defamation claim are identical. As such, the arbitration clause governs the defamation dispute. Defendants thirdly contend that Defendants distinguish <u>Hawai`i Medical Association v. Hawai`i Medical Service Association, Inc.</u> (upon which Plaintiffs rely), arguing that it stands for the proposition that arbitration provisions in individual physician contracts could not be enforced against the organization suing on their behalf because the language of the contracts required arbitration of specific decisions relative to individual physician/provider disputes. Defendants also proffer that the laws of construction applicable to arbitration clauses require that any doubts about the scope of arbitration should be resolved in favor of arbitration.

Lastly, Defendants reassert that Metzler is bound to arbitration because he signed the contract. They insist that because he signed as the company's authorized representative, he became the "contractor" for the purposes of being bound to the contract terms including the arbitration provision. Moreover, they claim that he is the RME, sole officer, managing member and identified representative of MCC, which makes him the legal representative of the same, both in the contract and under the

7

law.

**DISCUSSION**

## I.   <u>Compel Arbitration</u>

Hawaiʻi law recognizes a strong public policy in favor of arbitration and, where parties have an enforceable agreement to arbitrate, the courts' powers are limited by Hawaiʻi Revised Statutes Chapter 658A.  <u>Cf.</u> <u>Bateman Constr., Inc. v. Haitsuka Bros., Ltd.</u>, 77 Hawaiʻi 481, 484, 889 P.2d 58, 61 (1995) (concerning Chapter 658, predecessor to Chapter 658A).  Section 658A-7(a) provides, in pertinent part:

> (a)  On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
> . . . .
> (2)  If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

Haw. Rev. Stat. § 658A-7(a).  Thus, "when presented with a motion to compel arbitration, the court is limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement." <u>Hawaiʻi Med. Ass'n v. Hawaiʻi Med. Serv. Ass'n, Inc.</u>, 113 Hawaiʻi 77, 91, 148 P.3d 1179, 1193 (2006) (citation and quotation marks omitted). Whether there is a valid agreement to arbitrate a particular dispute is a matter of state contract law.  <u>See</u>, <u>e.g.</u>, <u>First</u>

8

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)
("When deciding whether the parties agreed to arbitrate a certain
matter (including arbitrability), courts generally . . . should
apply ordinary state-law principles that govern the formation of
contracts." (citations omitted)); see also Haw. Rev. Stat. §
658A-6(a) ("An agreement contained in a record to submit to
arbitration any existing or subsequent controversy arising
between the parties to the agreement is valid, enforceable, and
irrevocable except upon a ground that exists at law or in equity
for the revocation of a contract.").

        Indeed, "[w]hat issues, if any, are beyond the scope of
a contractual agreement to arbitrate depends on the *wording of
the contractual agreement to arbitrate*."  Hawai`i Med. Ass'n, 113
Hawai`i at 92, 148 P.3d at 1194 (quoting Rainbow Chevrolet, Inc.
v. Asahi Jyuken (USA), Inc., 78 Hawai`i 107, 113, 890 P.2d 694,
700 (Haw. App. 1995), superseded by statute as stated in, Ueoka
v. Szymanski, 107 Hawai`i 386, 114 P.3d 892 (2005)) (quotations
omitted).  The Court should therefore construe the contract as a
whole and determine its meaning "from the entire context and not
from any particular word, phrase, or clause."  Id. (quoting
Hawaiian Isles Enters., Inc. v. City & County of Honolulu, 76
Hawai`i 487, 491, 879 P.2d 1070, 1074 (1994)) (quotations
omitted).

9

In the instant case, the contract between the parties
contains an arbitration clause, which states that "[a]ny claim
arising out of or related to the Contract, except claims relating
to aesthetic effect and except those waived . . . shall, after
decision by the Architect or 30 days after submission of the
Claim to the Architect, be subject to arbitration."  At the
hearing, the Court determined, and the parties do not dispute,
that an arbitration agreement exists.  The remaining issue is
therefore whether Plaintiffs' defamation claim is arbitrable
under the foregoing clause.

According to Defendants, because the arbitration clause
is broad and "claims" include personal injury claims, under which
defamation falls, Plaintiffs must submit to arbitration.
Plaintiffs, on the other hand, contend that only those matters
relating to construction defects, defaults by owner regarding
payments, adjustments in costs and time, and injuries to persons
or property arising from the construction were contemplated by
the clause.  The express terms of the clause are very broad and
appear to mandate arbitration for the defamation claim, as the
defamation claim "aris[es] out of or [is] related to" the
construction contract to build Defendants' luxury home.  In their
Complaint, Plaintiffs specifically charge that Defendants "have
repeatedly defamed Plaintiffs by impugning their competence in
the business of contracting, denigrating the quality of their

10

work and accusing them of financial mismanagement and fraud on the Stephens job." [Compl. at ¶ 7.]  One instance in which Defendants allegedly made these statements was at a party in December 2005 in the Hawai'i home that is the subject of the contract.  [Id.]

Plaintiffs cite two cases involving defamation for the proposition that such claims fall outside the scope of an arbitration clause.  While instructive, these cases are distinguishable.  In <u>Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.</u>, 67 F.3d 20 (2d Cir. 1995), the Second Circuit held that the plaintiff's defamation claim was not governed by the parties' arbitration agreement.[3]  The plaintiff and the defendant had a long-standing agreement for dyeing, finishing and warehousing fabric.  Explaining that the main concern in deciding the scope of the agreement is to consider the reasonable expectations of the parties in agreeing to be bound, the court then closely examined the allegedly defamatory statements - that the plaintiff was 1) generally dishonest in its business practice; 2) incapable of supplying conforming goods to manufacturers; 3) in the practice of selling defective goods; and 4) guilty of attempting to defraud one of its customers by shipping the customer defective goods.  <u>Id.</u> at 28.  Based on its

---

[3]  The arbitration agreement stated: "Any controversy or claim arising under or in relation to this order or contract. . . ."  <u>Id.</u> at 23.

11

examination of the defamatory statement, the court held that none of the representations were about the contract between the parties and "there [was] nothing to indicate that, when [the parties] included an arbitration clause in their dyeing and warehousing agreements, they could reasonably have expected, or even contemplated, that that clause also would extend to a defamation claim based on statements about subjects other than [the defendant's] services for [the plaintiff]." Id. at 28-29. In other words, the statements contained charges that extended beyond the primary issues of dyeing and finishing as between the parties.

This case presents difference circumstances, as the defamatory statements alleged relate to the services provided for in the contract; that is, the construction of Defendants' residence.  The Court might agree with Plaintiffs' position if the defamatory statements extended to subject matters outside the scope of the contract.  But here, the defamatory statements are directly related to Plaintiffs' services for Defendants.  Indeed, the statements reference "the Stephens job," which is specific to the contract between the parties.

The other case cited is likewise distinguishable.  In Chassereau v. Global-Sun Pools, Inc., 611 S.E.2d 305 (S.C. Ct. App. 2005), the plaintiff contracted with the defendant company for the construction of a pool.  After experiencing problems with

12

the pool, the plaintiff requested a part from the defendant to enable proper function.  When the defendant did not provide the part or repair the pool, the plaintiff ceased payments.  The defendant's employees then began harassing and intimidating the plaintiff by phone at her workplace, leaving messages regarding her personal finances with her co-employees and accusing her of dishonesty in conversations with her supervisor, co-employees and relatives.  The court held that the defamation claims did not arise out of the contract, in particular because the arbitration provision limited arbitration to matters involving warranty, contract, negligence or strict liability.  <u>Id.</u> at 634 & n.15. According to the court, negligence does not encompass intentional torts such as defamation.

    The instant arbitration clause contains no such limiting language.  In fact, the contract includes a provision addressing injury or damage to person or property.  The statements in <u>Chassereau</u> also dealt with matters outside the scope of the contract.  The disclosure of the plaintiff's personal finances and accusations about her purported dishonesty to her supervisors and co-workers clearly extended beyond the contract to construct a pool.  Here, by contrast, the defamatory statements alleged center around the construction of Defendants' home, which is the subject of the contract.  The defamation does not, as Plaintiffs claim, arise independently of the contract.

13

This Court therefore finds that Plaintiffs' defamation claim falls within the scope of the arbitration agreement and it must be submitted to arbitration.

This Court only compels arbitration as to MCC, however. This Court disagrees with Defendants' contention that Metzler himself must also submit to arbitration.  Hawai'i Revised Statutes section 428-303 provides, in pertinent part, that

> the debts, obligations, and liabilities of a
> limited liability company, whether arising in
> contract, tort, or otherwise, are solely the
> debts, obligations, and liabilities of the
> company.  A member or manager shall not be
> personally liable for any debt, obligation, or
> liability of the company solely by reason of being
> or acting as a member or a manager.

Haw. Rev. Stat. § 428-303; cf. E. Star, Inc., S.A. v. Union Bldg. Materials Corp., 6 Haw. App. 125, 134-35, 712 P.2d 1148, 1155 (1985) (quoting Cahill v. Hawaiian Paradise Park Corp., 56 Haw. 522, 526, 543 P.2d 1356, 1360 (1975)) ("The established law is that corporate officers, directors, or shareholders 'are not personally liable for the tortious conduct of the corporation or its other agents, unless there can be found some active or passive participation in such wrongful conduct by such persons.'").  As this Court articulated at the hearing, entities act through individuals, but it does not necessarily follow that personally liability arises.  The evidence before the Court demonstrates that Metzler signed the contract as RME and managing member of MCC, not individually.  He is accordingly not

14

personally bound to the arbitration clause contained therein.

## II.  <u>Stay Litigation</u>

The last issue before this Court is whether to stay the case pending arbitration.  Hawai'i Revised Statutes section 658A-7(g) provides: "If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration.  If a claim subject to the arbitration is severable, the court may limit the stay to that claim."  Haw. Rev. Stat. § 658A-7(g).  Because the Court is compelling MCC to arbitrate its defamation claims pursuant to the arbitration clause in the contract, the case is HEREBY STAYED pending the arbitration.  Even though Metzler is not subject to the arbitration agreement, the Court, in its discretion, also stays the case as to Metzler in the interest of managing its docket and for judicial economy.  <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 21 n.23 (1983) (The decision of whether to stay litigation for a non-arbitrating party pending the outcome of litigation is one left to the district court as a matter of its discretion to control its docket.); <u>see also</u> <u>Summer Rain v. Donning Co./Publishers, Inc.</u>, 964 F.2d 1455, 1461 (4th Cir. 1992) (same).

<u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion to Compel Arbitration and Stay Litigation, filed on May 17, 2007, is HEREBY

GRANTED IN PART AND DENIED IN PART.  It is GRANTED in that MCC is compelled to arbitrate its claims and the case is stayed.  It is DENIED in that Metzler is not required to arbitrate his claims.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, July 3, 2007.



_/S/ Leslie E. Kobayashi_
Leslie E. Kobayashi
United States Magistrate Judge

**METZLER CORPORATION CO LLC, ET AL. V. ELLE STEPHENS, ET AL; CIVIL NO. 07-00261 HG-LEK; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**