IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

METZLER CONTRACTING CO. LLC    )        CIVIL NO. 07-00261 LEK
and JOHN METZLER,              )
                               )
          Plaintiff,           )
                               )
     vs.                       )
                               )
ELLE STEPHENS, ET AL.,         )
                               )
          Defendants.          )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF JOHN
METZLER'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

Before the Court is Plaintiff John Metzler's
("Metzler") Motion for Leave to File First Amended Complaint
("Motion"), filed on February 20, 2009.  Defendants Elle Stephens
and Paul Stephens (collectively "Defendants") filed their
memorandum in opposition on March 20, 2009, and Metzler filed his
reply on March 27, 2009.  This matter came on for hearing on
April 8, 2009.  Appearing on behalf of Metzler were Jerry Hiatt,
Esq., and Bruce Voss, Esq., and appearing on behalf of Defendants
were James McWhinnie, Esq., Melvyn Miyagi, Esq., Christi-Anne
Kudo Chock, Esq., and, by telephone, Ellis Ross Anderson, Esq.
After careful consideration of the Motion, supporting and
opposing memoranda, and the arguments of counsel, Metzler's
Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the
reasons set forth below.

**BACKGROUND**

This case arises out of a contract entered into by Plaintiff Metzler Contracting Co., LLC ("MCC") and Defendants on or around June 1, 2002, for the construction of a 11,000+ square foot residence in the Kukio Resort in Kona, Hawaii.  On April 25, 2007, MCC and Metzler (collectively "Plaintiffs") filed the instant defamation action in the Circuit Court of the Third Circuit, State of Hawaii.  Defendants removed the case to the district court on May 17, 2007.

On July 3, 2007, this Court issued an order granting in part and denying in part Defendants' Motion to Compel Arbitration and Stay Litigation ("Stay Order").  The Court ruled that MCC was required to arbitrate its claims pursuant to the contract and stayed MCC's claims pending arbitration.  The Court ruled that Metzler was not personally bound by the arbitration clause in the contract, but stayed his claims in the interest of judicial economy and case management.

MCC submitted its defamation claim in the pending arbitration on Defendants' construction defect and audit claims. On August 27, 2008, the arbitrator granted partial summary judgment in Defendants' favor and dismissed MCC's defamation claim with prejudice.

On February 3, 2009, this Court granted Metzler's Motion to Lift Stay.

2

In the instant Motion, Metzler seeks to amend his Complaint to add specificity to his defamation claim by including specific defamatory statements that Defendants allegedly made. Metzler also seeks to add new claims for intentional infliction of emotional distress ("IIED") and prima facie tort/liability for intended consequences of intentional harm ("prima facie tort"). The two new claims are based on the same conduct which forms the basis of the defamation claim. [Exh. A to Motion (Proposed First Amended Complaint).]  Metzler argues that Hawaii law recognizes causes of action for both IIED and prima facie tort.

Metzler argues that leave to amend is appropriate pursuant to Federal Rule of Civil Procedure 15.  He contends that Defendants will not be prejudiced by the amendments because discovery has not begun in this case and Defendants will have ample time to respond to the new claims.  Metzler states that there is no undue delay, bad faith, or dilatory motive in the Motion.  He brought the instant Motion within three weeks after this Court lifted the stay.

In their memorandum in opposition, Defendants argue that Metzler's defamation claim, as originally pled, only alleged damage to his business interests, *i.e.* to MCC.  Defendants contend that this is the same claim that the arbitrator dismissed with prejudice and therefore Metzler cannot relitigate the claim in this Court.  Defendants argue that Metzler is attempting to

3

recreate the defamation claim for himself, rather than his business interests.  Defendants also note that Metzler does not explain why he is only raising these proposed amendments two years after he filed the original Complaint and seven years after he commenced construction on Defendants' home.

Defendants argue that Metzler's proposed IIED claim is futile because, although emotional distress can be considered as part of the damages in a defamation action, it cannot form the basis of an independent emotional distress claim based on the same facts.  Thus, even assuming *arguendo* that Metzler suffered severe emotional distress as a result of the alleged defamatory statements, it cannot form the basis of an IIED claim.

Defendants also argue that Metzler's prima facie tort claim is futile because such a claim is not recognized by Hawaii law.  The case that Metzler cites in support of this claim, Giuliani v. Chuck, 1 Haw. App. 379, 386, 620 P.2d 733, 738 (1980), cited Restatement (Second) of Torts § 871 (1979). Section 871, however, does not define a new cause of action. Rather, it provides guidelines to courts that may wish to create new intentional torts.

In his reply, Metzler emphasizes that Defendants did not argue that they would be prejudiced by the amendments or that there is bad faith or undue delay.  Although they accuse Metzler of waiting two years to amend his Complaint, he could not bring

4

the instant Motion sooner because the case was stayed.

Metzler also argues that his claims are not futile.
The proposed First Amended Complaint states a claim for
defamation against him individually.  The arbitrator's ruling on
MCC's defamation claim does not affect Metzler's claim because
Metzler was not part of the arbitration.  Metzler therefore
argues that the amended defamation claim is not futile.  Further,
Metzler argues that he states a claim for IIED because, under
Hawaii law, a plaintiff can make a claim for both IIED and
defamation based upon the same facts and course of conduct.  It
is up to the jury to decide whether Defendants' conduct was
outrageous.  Finally, Metzler argues that he states a claim for
prima facie tort.  He asserts that it is proper to plead prima
facie tort as an alternative to defamation.  Metzler acknowledges
that, at the close of evidence at trial, only one claim can be
submitted to the jury.  If both claims remain, Metzler will
submit the defamation claim to the jury.  For pleading purposes,
however, Metzler can allege prima facie tort as an alternative.

## DISCUSSION

### I.   Scheduling Order

This Court's most recent scheduling order stated that
the deadline to add parties and amend pleadings was "N/A".
Metzler must therefore obtain an amendment of the scheduling
order to obtain leave to amend his Complaint.

A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).  The good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order; if the party seeking the modification was not diligent, the court should deny the motion.  See Zivkovic v. S. Cal. Edison Co., 302 F.3d 1080, 1087 (9th Cir. 2002).  "The pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"  Id. (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).

Metzler must first show "good cause" under Rule 16(b), then, if there is good cause, he must establish that amendment is appropriate under Federal Rule of Civil Procedure 15(a).  See Johnson, 975 F.2d at 608 (citing Forstmann v. Culp, 114 F.R.D. 83, 85 (M.D.N.C. 1987); Fin. Holding Corp. v. Garnac Grain Co., 127 F.R.D. 165, 166 (W.D. Mo. 1989)).

This Court notes that, in light of the stay that was in effect from July 3, 2007 to February 3, 2009, Metzler could not have sought leave to amend his Complaint during that time. Metzler filed the instant Motion approximately three weeks after this Court lifted the stay.  This Court therefore finds that Metzler has been diligent in seeking leave to amend his Complaint and that there is good cause to amend this Court's scheduling order.

## II.  **Rule 15(a) Standard**

Under Rule 15(a), a party must obtain leave of court or the written consent of the opposing party to amend its pleadings. "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).  The determination whether a party should be allowed to amend a pleading is left to the discretion of the court.  See Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971) (citation omitted).  If the facts or circumstances a plaintiff relies upon may be the basis of relief, he should be afforded an opportunity to test his claim on the merits.  See Foman v. Davis, 371 U.S. 178, 182 (1962). Furthermore, in exercising its discretion to grant leave to amend, a court "'should be guided by the underlying purpose of Rule 15(a) . . . which was to facilitate decisions on the merits, rather than on technicalities or pleadings.'"  In re Morris, 363 F.3d 891, 894 (9th Cir. 2004) (quoting James v. Pliler, 269 F.3d 1124, 1126 (9th Cir. 2001)) (alteration in original).

Courts may consider factors such as: bad faith or dilatory motive on the movant's part; whether the amendment will cause undue delay; whether it will prejudice the opposing party; futility of the amendment; and whether the movant has already failed to cure deficiencies in prior amendments of his pleadings. See Foman, 371 U.S. at 182; Morris, 363 F.3d at 894 (citation omitted).  Not all of these factors carry equal weight; prejudice

7

to the opposing party is the most persuasive factor.  <u>See</u>
<u>Eminence Capital, LLC v. Aspeon, Inc.</u>, 316 F.3d 1048, 1052 (9th
Cir. 2003) (citation omitted).  The party opposing the motion for
leave to amend bears the burden of establishing prejudice.  <u>See</u>
<u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d 183, 187 (9th Cir. 1987)
(citing <u>Beeck v. Aqua-slide 'N' Dive Corp.</u>, 562 F.2d 537, 540
(8th Cir. 1977)).  If there is neither prejudice to the opposing
party nor a strong showing of the remaining factors, there is a
presumption in favor of granting leave to amend.  <u>See</u> <u>Eminence</u>,
316 F.3d at 1052 (citing <u>Lowrey v. Tex. A&M Univ. Sys.</u>, 117 F.3d
242, 245 (5th Cir. 1997)).

          This Court has already found that Metzler did not have
a prior opportunity to amend his Complaint, and that he was
diligent in bringing the instant Motion.  Further, the proposed
amendments would not unduly delay the case and would not
prejudice Defendants.  This case is in its early stages and there
would be ample time for Defendants to respond to the new claims.
Defendants' primary argument against the proposed amendments is
that the proposed claims are futile.

          "Futility of amendment can, by itself, justify the
denial of a motion for leave to amend."  <u>Bonin v. Calderon</u>, 59
F.3d 815, 845 (9th Cir. 1995).  An amendment is futile when "no
set of facts can be proved under the amendment to the pleadings
that would constitute a valid and sufficient claim or defense."

<u>Miller v. Rykoff-Sexton, Inc.</u>, 845 F.2d 209, 214 (9th Cir. 1988)
(citations omitted).

  Defendants argue that the proposed amendments to
Metzler's defamation claim are futile because it is the same
claim that the arbitrator dismissed with prejudice and therefore
Metzler cannot relitigate the claim in this Court.  This Court
finds that Defendants have not established that the proposed
amendments to Metzler's defamation claim are futile.  First, the
arbitrator had not issued a final award and such award must then
be judicially confirmed.  Whether and when the arbitrator's
ruling on MCC's defamation claim has any effect on Metzler's
claim should be addressed in a dispositive motion rather than at
the Rule 15(a) stage.  This Court therefore finds that Metzler's
proposed amendments to his defamation claim are not futile.

  Defendants next argue that Metzler's proposed IIED
claim is futile because a plaintiff cannot allege a defamation
claim and an IIED claim based on the same set of facts.
Defendants argue that Metzler may only assert his emotional
distress as an element of his damages on the defamation claim.
Defendants rely on <u>Brunette v. Humane Society of Ventura County</u>,
No. 00-56730, 2002 WL 1421540, at *2 (9th Cir. June 28, 2002),
which states: "Although emotional distress may be considered as
damage in a properly stated defamation action, it cannot form the
basis of an independent infliction of emotion distress action on

the same facts." This statement, however, was expressly based on California law. See id. (citing Grimes v. Carter, 50 Cal. Rptr. 808, 813 (Ct. App. 1966)). This Court did not find any Hawaii case law articulating a similar rule, and at the hearing on the Motion, defense counsel acknowledged that there is no Hawaii case law directly on point. This Court therefore cannot accept Defendants' futility argument.

The IIED tort is well established under Hawaii law. See, e.g., Young v. Allstate Ins. Co., 119 Haw. 403, 425, 198 P.3d 666, 688 (2008) (stating that the elements of an IIED claim are: "(1) that the conduct allegedly causing the harm was intentional or reckless; (2) that the conduct was outrageous; and (3) that the conduct caused (4) extreme emotional distress to another" (citations and quotation marks omitted)). Metzler ultimately may not be able to establish all of these elements, but this Court cannot say at this stage of the case that the are no set of facts under which he would be entitled to relief. This Court therefore finds that Metzler's proposed IIED claim is not futile.

Finally, Defendants argue that Metzler's prima facie tort claim is futile because such a claim is not recognized by Hawaii law. Metzler argues that Giuliani v. Chuck, 1 Haw. App. 379, 386, 620 P.2d 733, 738 (1980), recognized this cause of action under Hawaii law. In Giuliani, the Hawaii Intermediate

10

Court of Appeals ("ICA") stated:

>        In our view, the essence of the Giulianis'
> amended complaint is that Chuck intentionally and
> improperly refused to return their $1,000.00
> deposit.  Therefore, the amended complaint is
> sufficient to state a cause of action for
> intentional harm to a property interest, a
> cognizable cause of action sounding in tort.
> Restatement, Second, Torts s 871.

>        One who intentionally deprives another of his
>        legally protected property interest or causes
>        injury to the interest is subject to
>        liability to the other if his conduct is
>        generally culpable and not justifiable under
>        the circumstances.

1 Haw. App. 379, 386, 620 P.2d 733, 738 (1980) (quoting

Restatement (Second) of Torts § 871).

        Giuliani does appear to cite § 871 as a separate tort.

However, no other Hawaii case cites Giuliani for this

proposition, and no other Hawaii case cites Restatement (Second)

of Torts § 871.  Thus, the Hawaii Supreme Court has not addressed

the issue whether prima facie tort is an actionable claim under

Hawaii law.  "[W]here the state's highest court has not decided

an issue, the task of the federal courts is to predict how the

state high court would resolve it."  Air-Sea Forwarders, Inc. v.

Air Asia Co., 880 F.2d 176, 186 (9th Cir. 1989) (citations and

quotation marks omitted).  This Court must therefore predict

whether the Hawaii Supreme Court would recognize a separate cause

of action for prima facie tort.  There is no indication that the

Hawaii Supreme Court would reject Giuliani, but neither is there

11

any indication that it would expand <u>Giuliani</u> beyond the facts of that case.  In light of the fact that <u>Giuliani</u> has stood on its own for almost thirty years, this Court predicts that the Hawaii Supreme Court would only recognize a separate cause of action for prima facie tort under facts virtually identical to <u>Giuliani</u>.

In <u>Giuliani</u>, the ICA did not recognize prima facie tort as an alternative to another well-recognized cause of action. The ICA found that the Giulianis' amended complaint failed to sufficiently allege any other cause of action.  In particular, the Giulianis failed to sufficiently allege a fraud claim.  <u>See</u> 1 Haw. App. at 386, 620 P.2d at 738.  The instant case is therefore <u>Giuliani</u>.  This Court further finds that Metzler's prima facie tort claim is futile because there is no Hawaii case law supporting his position that he can plead prima facie tort as an alternative to his defamation claim.

<u>**CONCLUSION**</u>

On the basis of the foregoing, Metzler's Motion for Leave to File First Amended Complaint, filed February 20, 2009, is HEREBY GRANTED IN PART AND DENIED IN PART.  The Court GRANTS the Motion as to Metzler's proposed amendments to his defamation claim and his proposed intentional infliction of emotional distress claim, and DENIES the Motion as to Metzler's proposed claim for prima facie tort.  Metzler shall file his First Amended Complaint, in the form attached to the Motion after the omission

of the claim for prima facie tort, by no later than **April 24, 2009**.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 17, 2009.



 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

METZLER CONTRACTING CO., LLC, ET AL. V. ELLE STEPHENS, ET AL; CIVIL NO. 07-00261 LEK; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF JOHN METZLER'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT