IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

METZLER CONTRACTING CO. LLC ) CIVIL NO. 07-00261 LEK
and JOHN METZLER, )
)
        Plaintiff, )
)
    vs. )
)
ELLE STEPHENS, ET AL., )
)
        Defendants. )
_____

**ORDER DENYING PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**

        Before the Court are Plaintiff John Metzler's
("Plaintiff") Motion to Compel Production of Documents ("Motion
to Compel"), filed on May 5, 2009, and Defendants Elle Stephens
and Paul Stephens' (collectively "Defendants") Motion for
Protective Order, filed May 1, 2009.  The Court finds these
matters suitable for disposition without a hearing pursuant to
Rule LR7.2(d) of the Local Rules of Practice of the United States
District Court for the District of Hawaii ("Local Rules").  After
careful consideration of the motions, supporting and opposing
memoranda, and the relevant legal authority, Plaintiff's Motion
to Compel is HEREBY DENIED for the reasons set forth below, and
Defendants' Motion for Protective Order is HEREBY DENIED AS MOOT
in light of the Court's ruling on the Motion to Compel.

**BACKGROUND**

        This case arises out of a contract that Defendants and

Metzler Contracting Co., LLC ("MCC") entered into on or around June 1, 2002 for the construction of a 11,000+ square foot residence in the Kukio Resort in Kona, Hawaii.  On April 25, 2007, Plaintiff and MCC filed the instant defamation action in the Circuit Court of the Third Circuit, State of Hawaii.[1]  They alleged that Defendants defamed them because Defendants were displeased with their work on the residence.  Defendants removed the case on May 17, 2007.

On July 3, 2007, this Court issued an order granting in part and denying in part Defendants' Motion to Compel Arbitration and Stay Litigation ("Stay Order").  The Court ruled that MCC was required to arbitrate its claims pursuant to the contract and stayed MCC's claims pending arbitration.  The Court ruled that Plaintiff was not personally bound by the arbitration clause in the contract, but stayed his claims in the interest of judicial economy and case management.

MCC submitted its defamation claim in the pending arbitration on Defendants' construction defect and audit claims.  The parties apparently conducted significant discovery during the arbitration.  On August 27, 2008, the arbitrator granted partial summary judgment in Defendants' favor and dismissed MCC's defamation claim with prejudice.

---

[1] Plaintiff is the president of MCC, which specializes in the construction of high-end residential homes and primarily does business on the Island of Hawaii.

On February 3, 2009, this Court granted Plaintiff's Motion to Lift Stay.  On April 8, 2009, this Court lifted the discovery stay.  [Minutes, filed 4/8/09 (dkt. no. 77).]  On April 17, 2009, this Court granted in part and denied in part Plaintiff's Motion for Leave to File First Amended Complaint. Plaintiff filed his First Amended Complaint on April 24, 2009.[2] The First Amended Complaint alleges a claim for defamation and a claim for intentional infliction of emotional distress.  Based on discovery in the arbitration, Plaintiff alleges that Defendants: called him a "thug", a "bully", and a "head case"; accused him of being dishonest and incompetent; and disparaged the quality of his work.  Plaintiff also argues that, based on Elle Stephens' testimony in her deposition, it is likely that she made even more disparaging comments to even more people than she could remember at the time of her deposition.

I.   **Motion to Compel**

The instant Motion to Compel states that, on or about May 30, 2008 in the arbitration, Defendants produced a 125-page privilege log listing 1,978 documents that were allegedly protected by the attorney-client privilege and/or the work product doctrine.  Plaintiff alleges that Defendants have improperly withheld approximately 554 documents that are not

---

[2] MCC, which was a plaintiff in the original Complaint, is not named as a plaintiff in the First Amended Complaint.

privileged.

For example, Plaintiff states that there are at least 173 communications between Elle Stephens and third parties which do not involve Defendants' counsel.  In addition, several communications between Defendants and their counsel were disclosed to third parties.  The third parties include: Elle Stephens' assistant; Defendants' bookkeeper; and contractors that Defendants retained to work on their residence.  There are also numerous communications addressed to Elle Stephens from Elle Stephens, as well as communications with expert witnesses in the arbitration.  There is even a communication that included opposing counsel.

During the arbitration, MCC sought to compel the production of many of these documents.  After MCC filed a motion to compel before the arbitrator, Defendants produced thirty-nine documents which they claimed were erroneously withheld.  In the instant Motion to Compel, Plaintiff argues that this casts doubt on the validity of Defendants' remaining claims of privilege.

Plaintiff argues that many of the documents on Defendants' privilege log are not subject to the attorney-client privilege because they are communications which include non-attorney and non-client third parties.  Any attorney-client privilege was therefore waived as to those documents.  Plaintiff argues that the following third parties are neither attorneys nor

4

clients:

Cindy Adams - Operations Manager, de Reus Architects, which
     provided architectural services for Defendants' residence;
Denise Banister - employee of unknown third party;
Ted Bissel - contractor who worked on Defendants' residence;
Joann Brooke - unknown third party;
Dan Carlos - unknown third party;
Scott Dale - architect who provided services for Defendants'
     residence;
Mark de Reus - principal of de Reus Architects;
Ole Hansen - employee of Ted Bissel Contracting;
Leslie Hayes - Elle Stephens' assistant;
Colin Johns - Defendants' accountant;
Julian Johnson - with B.O.S. Electric, which provided electrical
     services for Defendants' residence;
Jayne Kerns - employee of de Reus Architects;
Dina Powers - unknown third party;
Dan Smith - unknown third party;
Tony Smith - contributed to Defendants' audit report and attended
     site inspections;
Todd Terry - with Sound Advice Pacific, which provided
     audio/visual services for Defendants' residence
Peter Walburn - of Teichner-Walburn & Associates, which provided
     construction management services for Defendants' residence;
Helmut Winkelhake - provided landscaping services for Defendants'
     residence; and
"Joe" - unknown third party.

[Mem. in Supp. of Motion to Compel at 8-11.]  Plaintiff argues

that none of these people are Defendants' representatives for

purposes of the attorney-client privilege because none of them

are attorneys, and none of them appear to have the authority to

obtain professional services or to act on legal advice on

Defendants' behalf.  Even if these third parties were Defendants'

representatives, there is no evidence that each of the documents

was created to facilitate in the rendition of legal services.

     Similarly, the communications to Elle Stephens from

herself were not confidential communications with legal

professionals or their representatives and there is no indication that they were for the purpose of facilitating the rendition of legal services.

Plaintiff also argues that the communications between Defendants or their counsel and Defendants' expert witnesses are not privileged.  For example, Elle Stephens and her counsel communicated with Jax Kneppers and representatives of his construction consulting firm, Jax Kneppers Associates, Inc. There are also several documents that Jax Kneppers Associates were given copies of.  Mr. Kneppers is Defendants' designated expert witness regarding alleged construction defects in the arbitration.  Thus, any documents given to him, or communications with him, are not confidential communications and are not privileged.  Denise Banister, Joanne Brooke, Roberto Soto-Maynez, and Hector Pons are known or suspected members of Jax Kneppers Associates.

Plaintiff also argues that communications between third parties which Defendants or their counsel were merely copied on are not privileged because the third parties listed on the privilege log are not Defendants' representatives for purposes of the attorney-client privilege.

Finally, Plaintiff argues that Defendants have not proved that the work product doctrine applies.  There is no indication that the documents were prepared in anticipation of

6

litigation or that the documents contain counsel's mental impressions.  Defendants' blanket assertions of the privilege are not enough.

Pursuant to Federal Rule of Civil Procedure 37(a)(5), Plaintiff argues that, under the circumstances, the Court should award him his attorney's fees and costs incurred in bringing the instant Motion to Compel.

Defendants filed their memorandum in opposition on May 21, 2009.  Defendants first argue that the Motion to Compel is procedurally defective because a request for production of documents was neither made by Plaintiff nor rejected by Defendants.  Plaintiff seeks only to compel the production of documents that were the subject of a discovery request in the arbitration.  Defendants acknowledge that Plaintiff served them with a First Request for Production of Documents in this case on October 30, 2008 and that it was also sent to defense counsel via email on February 18, 2009.  The discovery stay in this case, however, was not lifted until April 2009.  Defendants therefore argue that the requests for production of documents were void.

Defendants also argue that Plaintiff brought the instant Motion to Compel for the improper purpose of circumventing the discovery deadline in the arbitration. Further, Plaintiff seeks to compel the disclosure of documents that the arbitrator has already ruled are privileged and are not

discoverable.  In the arbitration, MCC filed a virtually identical motion to compel, which the arbitrator denied.  The instant Motion to Compel is essentially a motion for reconsideration of the arbitrator's decision and this Court should not reconsider the arbitrator's decision.

Defendants also argue that the Motion to Compel seeks documents that are not relevant to the claims in this case.  For example, Defendants retained Mr. Kneppers as an expert in the arbitration to opine on construction defect issues.  Defendants have not retained him as an expert in the instant case. Mr. Kneppers' testimony on the construction defects claim in the arbitration is not relevant to the claims in the instant case.

Defendants state that the applicability of the attorney-client privilege and the work product doctrine was fully litigated in the arbitration.  Defendants and their counsel retained De Reus Architects, Scott Dale, Ted Bissel Contracting, BOS Electric, and Teichner Walburn after Plaintiff walked off the job in 2005.  Each was retained to advise Defendants and their counsel about the construction defects that existed and the anticipated litigation over those defects.  Each of them, at counsel's direction, participated in or facilitated counsel's investigation of the construction defects that are the subject of the arbitration.  Defendants therefore argue that any and all withheld emails to, from, or copying individuals with those

8

groups were in furtherance of counsel's fact gathering. These persons were representatives of Defendants and/or their counsel and the communications were in anticipation of litigation. They are therefore protected by the attorney-client privilege or the work product doctrine.

Defendants state that all of the emails to, from, or copied to their experts were sent on the direction of defense counsel in the arbitration. All of the experts were retained by counsel to assist in the preparation of the litigation of the construction defect and audit claims. Thus, they are protected by the attorney-client privilege or the work product doctrine. Further, Federal Rule of Civil Procedure 26(a)(2)(B)(ii) allows for the discovery of data and other information considered by a party's testifying expert. None of the experts listed in the Motion to Compel have been identified by Defendants as experts in the instant case.

Defendants also argue that Ms. Powers (Defendants' accountant) and Ms. Hayes (Elle Stephens' assistant) are their representatives for purposes of the attorney-client privilege. Ms. Powers and Ms. Hayes have been, and will continue to be, involved in fact gathering and communications about the arbitration and litigation. They participate in conferences with Defendants and their counsel regarding the litigation, including discovery, damages, and evidentiary issues. Thus, their

communications are protected.

As to the communications from Elle Stephens to herself, she created them in response to instructions from counsel to make notations and reminders about her case related communications with counsel and/or Ms. Hayes.  Elle Stephens used these emails to respond to later inquiries from her counsel and to communicate with them and with their representatives.  Thus, they were prepared in anticipation of litigation.  Many emails were forwarded from counsel and contain the mental impressions, conclusions, opinions, and or legal theories of defense counsel and/or their representatives.

Finally, Defendants argue that, because Plaintiff filed the instant Motion to Compel without serving a request for production of documents, the Court should deny the Motion to Compel and award Defendants the attorney's fees and costs they incurred in opposing it.

Plaintiff filed his reply on May 28, 2009.  He states that, in addition to sending his First Request for Production of Documents to Defendants on October 30, 2008 and February 18, 2009, he also re-sent it on May 4, 2009.  Defendants have not responded to these requests.

Plaintiff argues that the fact that Defendants asserted privileges in the arbitration does not prevent him from challenging those assertions in the instant case because he is

not a party to the arbitration and is entitled to conduct his own discovery on issues relevant to this case.  He also notes that this Court's ruling would not affect what the arbitrator's evidentiary rulings in the arbitration.

Plaintiff states that he is not attempting to conduct discovery on the construction defect or audit claims which are at issue between Defendants and MCC in the arbitration. Communications about alleged problems with the construction of Defendants' residence, however, are relevant to the instant case because many of the allegedly defamatory statements relate to the construction.  Further, Defendants have asserted truth as a defense to the defamation claim.  Defendants cannot withhold discovery of documents and information that would disprove their truth defense.

Plaintiff argues that Defendants have not carried their burden of establishing that all of the contested documents are privileged.  Merely because Ms. Hayes and Ms. Powers are their employees and were allegedly asked to participate in litigation preparation does not make all communications with them privileged.  Defendants must prove that each document is privileged.  Defendants failed to do so and must produce all communications involving Ms. Hayes and Ms. Powers.  The same argument also applies to communications involving the other alleged defense consultants.  Plaintiff argues that the

11

memorandum in opposition misrepresents Defendants' relationship with Mr. de Reus and the other consultants. Elle Stephens testified during her deposition that Mr. de Reus and Mr. Dale were the architects for their project. Thus, they were not just litigation consultants. Similarly, Plaintiff argues that Defendants have not established that each document is protected by the work product doctrine. They have merely made a blanket assertion of privilege.

Defendants also failed to establish that each communication from Elle Stephens to herself is privileged. Her claim that she utilized the emails to respond to inquiries from defense counsel is not enough to establish privilege. As an example, Plaintiff points to an email that was apparently blind copied to her neighbors in which she, *inter alia*, informs them of the repairs to Defendants' home and apologizes for the mess and the noise. Plaintiff argues that this indicates that the communications from Elle Stephens to herself are more than just notes and reminders.

Finally, Plaintiff argues that Defendants' communications with their experts are discoverable to the extent that they are not privileged. Defendants have no expectation of confidentiality with respect to their communications with Mr. Kneppers or any of their other testifying experts in the arbitration or in the instant case.

12

## II.  __Motion for Protective Order__

Defendants' Motion for Protective Order seeks a protective order regarding subpoenas and notices of depositions upon written interrogatories that Plaintiff served on various non-parties.[3]  The subpoenas are dated April 15, 2009 and list four separate requests (collectively "the Requests"):

> (1)   Any and all documents referring to or relating in any way to John Metzler, Metzler Contracting Co., LLC, or any of its employees, agents, or representatives (hereinafter referred to as "Request No. 1").

> (2)   Any and all documents constituting, regarding, or referring to any communications between you and Elle Stephens or Paul Stephens from July 2002 to present, including specifically but not limited to any e-mails and attachments sent or received on the ellestephens.com e-mail account or the Paul@sthepensim.com e-mail account (hereinafter referred to as "Request No. 2").

> (3)   Any and all documents referring to or relating in any way to the development, construction, maintenance, repair, reconstruction, occupancy, or use of the residence owned by Elle Stephens and Paul Stephens locate (sic) at 72-129 Lei Kauna`oa, Kailua-Kona, Hawaii 96740 ("the Stephens Residence")(hereinafter referred to as "Request No. 3").

> (4)   Any and all documents referring or relating in any way to any of your visits to the

---

[3] Plaintiff noticed the depositions of Robert and Janice Herwick, Mark de Reus, Leslie Hayes-Cullins, J. Scott Dale, and Carl and Mary Jane Panattoni for May 4, 2009, and the depositions of Rick and Donna Fluegel, David Stocker, Ted Bissell, Carol Bartz, P. Bart Stephens, W. Bradford Stephens, Amy Povich Agus, and Jeff Werner for May 15, 2009.

Stephens Residence, whether for a party, dinner, or otherwise (hereinafter referred to as "Request No. 4").

[Mem. in Supp. of Motion for Protective Order at 2-3 (citations omitted).]

Defendants argue that the Requests are overly broad, duplicative and cumulative of prior discovery, irrelevant, and were served for an improper purpose.  Defendants contend that Plaintiff is attempting to reopen discovery for the construction defect claim at issue in the arbitration.  Request No. 3 pertains to the construction defect claim and is not relevant to any claim or defense in the instant case.  Request No. 4, dealing with Defendants' social life, is irrelevant the claims and defenses in this case and is overly intrusive.

The identities of some of the deponents illustrate that the deposition notices and subpoenas are overly broad and irrelevant.  Dr. Robert Herwick is Defendants' doctor.  The Requests to him would yield information about Defendants' health and medical history which are not at issue in this case. Further, such information would be privileged because of the physician-patient relationship.

Although Plaintiff's counsel has represented that Plaintiff is not trying to reopen discovery in the arbitration, the Requests are almost identical to subpoenas served in the arbitration.

14

Plaintiff filed his memorandum in opposition on May 15, 2009.  Plaintiff argues that Defendants have no basis to object to the subpoenas or to seek a protective order.  Plaintiff argues that Defendants have not shown good cause for a protective order.  Defendants have not established how the subpoenas would cause them or the persons subpoenaed any annoyance, embarrassment, oppression.  Defendants merely make conclusory arguments.

Plaintiff also argues that Defendants cannot rely on the arbitrator's ruling on the motion to compel in that proceeding.  That motion dealt with the production of e-mails by Defendants and not with e-mails in the care, custody or control of the non-parties who Plaintiff subpoenaed.  Further, Defendants' production of e-mails in the arbitration occurred around April 2008.  It is likely that Defendants created more responsive emails after that.

Plaintiff argues that the subpoenaed documents are relevant to the instant case because Defendants are asserting truth as a defense to his defamation claim.  Information about Defendants' social gatherings is also relevant because that is when they made some of their most disparaging statements about Plaintiff.

## **DISCUSSION**

### I.   **Motion to Compel**

Federal Rule of Civil Procedure 34(b)(2)(A) states that

a party has thirty days after service to respond to a request for production of documents.  Plaintiff served Defendants with the First Request for Production of Documents at issue in the Motion to Compel on October 30, 2008.  He re-transmitted it on February 18, 2009 and May 4, 2009.  The stay of the instant case was still in effect on October 30, 2008, and the discovery stay was still in effect on February 18, 2009.  Defendants therefore were not obligated to respond to the First Request for Production of Documents until being served with it on May 4, 2009.

Plaintiff's Motion to Compel, filed on May 5, 2009, was premature because he filed it before Defendants' response was due.  The Motion to Compel is therefore DENIED WITHOUT PREJUDICE. The Court DIRECTS Defendants to respond to the First Request for Production of Documents, including the production of a revised privilege log, by **August 14, 2009**.  By way of guidance, the Court provides the following discussion of the attorney-client privilege and the work product doctrine to assist counsel and the parties in taking a fresh look at documents which may have been withheld in the related arbitration.

The instant matter is based on diversity jurisdiction. [Notice of Removal of Action, filed 5/17/09 (dkt. no. 1), at ¶ 4.]  A federal court sitting in diversity jurisdiction must apply the substantive law of the forum state.  See KL Group v. Case, Kay & Lynch, 829 F.2d 909, 918 (9th Cir. 1987) ("The availability

of the attorney-client privilege in a diversity case is governed by state law.") (citing Fed. R. Evid. 501).[4]

## A.   Attorney-Client Privilege

Hawaii law recognizes that the attorney-client privilege may be invoked to prevent the disclosure of confidential communications made for the purpose of facilitating the rendition of professional legal services to the client.  The privilege, however, "must be strictly limited to the purpose for which it exists."  DiCenzo v. Izawa, 68 Haw. 528, 535, 723 P.2d 171, 175 (1986).  Under Hawaii case law, communications made to an attorney for the purpose of seeking business advice are not protected by the attorney-client privilege.  See, e.g., Save Sunset Beach Coal. v. City & County of Honolulu, 102 Haw. 465, 485, 78 P.3d 1, 21 (2003) (stating that a communication is privileged "'(1) where legal advice of any kind is sought (2)

---

[4]   Rule 501 provides in pertinent part:
> Except as otherwise required by the
> Constitution of the United States or provided by
> Act of Congress or in rules prescribed by the
> Supreme Court pursuant to statutory authority, the
> privilege of a witness, person, government, State,
> or political subdivision thereof shall be governed
> by the principles of the common law as they may be
> interpreted by the courts of the United States in
> the light of reason and experience.  However, in
> civil actions and proceedings, with respect to an
> element of a claim or defense as to which State
> law supplies the rule of decision, the privilege
> of a witness, person, government, State, or
> political subdivision thereof shall be determined
> in accordance with State law.
Fed. R. Evid. 501.

from a professional legal adviser in his [or her] capacity as
such, (3) the communication relating to that purpose . . . .'"
(quoting Sapp v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980))
(some citations omitted) (alteration in original)); see also I
Edna Selan Epstein, *The Attorney-Client Privilege and the Work-
Product Doctrine* 64-66 (5th ed. 2007).

> In reviewing both Hawaii and federal law, it is clear
that the attorney-client privilege is not automatically applied
to a communication merely because an attorney conveyed
information to a client.  For instance, where an attorney
communicates information that is publically available, that
information standing alone is not likely to fall within the
attorney-client privilege.  See, e.g., United States v. Martin,
278 F.3d 988, 1000 (9th Cir. 2002).

> The Court notes from the outset that the party
asserting the attorney-client privilege has the burden of
establishing "the existence and validity of the privilege".
DiCenzo, 68 Haw. at 536, 723 P.2d at 176 (citation and quotation
marks omitted).  The essential elements of the privilege are:

> > (1) where legal advice of any kind is sought (2)
> > from a professional legal adviser in his [or her]
> > capacity as such, (3) the communication relating
> > to that purpose, (4) made in confidence (5) by the
> > client, (6) are at his [or her] instance
> > permanently protected (7) from disclosure by
> > himself or by the legal adviser, (8) except the
> > protection be waived.

Save Sunset Beach, 102 Haw. at 485, 78 P.3d at 21 (quoting Sapp

18

v. Wong, 62 Haw. 34, 38, 609 P.2d 137, 140 (1980) (quoting 8
Wigmore, Evidence, § 2292 (McNaughton rev.1961))) (alterations in
original).  Under Hawaii law,

> A client has a privilege to refuse to disclose and
> to prevent any other person from disclosing
> confidential communications made for the purpose
> of facilitating the rendition of professional
> legal services to the client (1) between the
> client or the client's representative and the
> lawyer or the lawyer's representative, or (2)
> between the lawyer and the lawyer's
> representative, or (3) by the client or the
> client's representative or the lawyer or a
> representative of the lawyer to a lawyer or a
> representative of a lawyer representing another
> party in a pending action and concerning a matter
> of common interest, or (4) between representatives
> of the client or between the client and a
> representative of the client, or (5) among lawyers
> and their representatives representing the same
> client.

Haw. R. Evid. 503(b).  Thus, the attorney-client privilege
extends to communications both to and from the attorney.  The
Hawaii Supreme Court, however, has cautioned that, since the
privilege "works to suppress otherwise relevant evidence and
forestall a search for truth, the limitations which restrict the
scope of its operation . . . must be assiduously heeded."
DiCenzo, 68 Haw. at 535, 723 P.2d at 175 (citations and quotation
marks omitted) (alteration in original).

Where a third-party is present during attorney-client
communications, or where no attorney-client relationship exists,
there may not be any privileged communication.  Voluntary
disclosure of privileged information to a third-party results in

19

waiver of the privilege as to communications on that subject.

See Haw. R. Evid. 511.  Courts have recognized an exception to

this general rule, however, known as the "common interest

doctrine" or the "joint defense doctrine".

The Hawaii Supreme Court has adopted the joint defense

doctrine in the criminal context.  It expressly approved and

adopted the following framework set forth by the Fifth Circuit:

> We do not hold that disclosures between and among
> several defendants and their counsel in . . .
> group defense contexts would lack confidentiality,
> and therefore lack [s]ixth [a]mendment protection.
> On the contrary, . . . **the attorney-client
> privilege applies to confidential communications
> among attorneys and their clients for purposes of
> a common defense**.  See United States v. McPartlin,
> 595 F.2d 1321 (7th Cir.), cert. denied, 444 U.S.
> 833, 100 S.Ct. 65, 62 L.Ed.2d 43 . . . (1979);
> Hunydee v. United States, 355 F.2d 183 (9th
> Cir.1965); Continental Oil Co. v. United States,
> 330 F.2d 347 (9th Cir.1964); In the Matter of
> Grand Jury Subpoena, Etc., 406 F.Supp. 381
> (S.D.N.Y.1975); see also 2 Weinstein's Evidence, ¶
> 503(b)[06] (1980).  However, even in the
> multiparty context, the disclosures must be made
> in circumstances which indicate that they were
> made in confidence.  See United States v.
> Friedman, 445 F.2d 1076, 1085 n. 4 (9th Cir.),
> cert. denied, 404 U.S. 958, 92 S.Ct. 326, 30
> L.Ed.2d 275 . . . (1971).  We observe only that
> there is no confidentiality when disclosures are
> made in the presence of a person who has not
> joined the defense team, and with respect to whom
> there is no reasonable expectation of
> confidentiality.  We hold today only that there is
> no governmental intrusion into the attorney-client
> relationship in violation of the [s]ixth
> [a]mendment when a confidential informant attends
> a meeting of . . . defendants and their counsel .
> . . under circumstances indicating that the . . .
> defendants and their counsel knew or should have
> known that the informant was not part of the

> defense team and knew or should have known that
> there was no reasonable expectation of
> confidentiality in the presence of the informant.

State v. Soto, 84 Haw. 229, 239, 933 P.2d 66, 76 (1997) (quoting

United States v. Melvin, 650 F.2d 641, 645-46 (5th Cir. 1981))

(alterations in original) (emphasis added).

Although the Hawaii Supreme Court has not expressly

adopted the doctrine in the civil context, it is likely that the

supreme court would do so because the doctrine appears to be

supported by the language of Rule 503(b).  See Haw. R. Evid.

503(b)(3) (stating that the attorney-client privilege applies to

communications "by the client or the client's representative or

the lawyer or a representative of the lawyer to a lawyer or a

representative of a lawyer representing another party in a

pending action and concerning a matter of common interest").

From the information provided to date, however, it appears

unlikely that the common interest doctrine applies to the

documents at issue in the Motion to Compel.

As to the category of documents which are described as

messages or letters sent and received by Defendant Elle Stephens,

to the extent that these messages contain facts (such as the

location of architectural drawings or the type of material used),

then they are not protected either by the attorney-client

privilege or the work product doctrine, even if these messages

were created at the direction of her attorneys.

21

In withholding documents, the parties are urged to proceed with care.  Information received from or communicated to an attorney is not necessarily protected by the attorney-client privilege.  For instance, communication of publicly-obtained information may or may not be subject to the privilege depending on whether the "communication was treated as confidential by the client and would tend to reveal a confidential communication of the client."  In re Ampicillin Antitrust Litig., 81 F.R.D. 377, 390 (D.D.C. 1978) (citation omitted).[5]  Facts received from a third party by an attorney about a client are not privileged.  See In re Fischel, 557 F.2d 209, 212 (9th Cir. 1977).  There is no expectation of confidentiality with respect to facts and the attorney's subsequent use of the information does not automatically make it privileged information.  See id. Therefore, factual summaries or reports merely transmitting factual information such as measurements, photographs, and diagrams are not likely to be found by the Court to be privileged

---

[5] The attorney-client privilege under Hawaii law and the privilege under federal law are both based on the common law privilege.  See Holliday v. Extex, 447 F. Supp. 2d 1131, 1137 (D. Haw. 2006) (citing DiCenzo v. Izawa, 68 Haw. 528, 535, 723 P.2d 171, 175 (1986) (stating that Rule 503 codified the common law attorney-client privilege, which had been long recognized by Hawaii courts); Fed. R. Evid. 501 (stating that "the privilege of a witness . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience")).  This Court therefore looks to federal common law regarding the attorney-client privilege when there is no Hawaii case on directly on point.

communications.

B.   **Work Product Doctrine**

"Unlike the attorney-client privilege, the work-product doctrine is a procedural immunity and *not an evidentiary privilege*." <u>F.D.I.C. v. Fid. & Deposit Co. of Maryland</u>, 196 F.R.D. 375, 381 (S.D. Cal. 2000) (citation omitted) (emphasis in original).  The scope of the work product doctrine is therefore determined by federal law, even when the federal court sits in diversity.  <u>See</u>, <u>e.g.</u>, <u>Baker v. Gen. Motors Corp.</u>, 209 F.3d 1051, 1053 (8th Cir. 2000); <u>Frontier Ref., Inc. v. Gorman-Rupp Co., Inc.</u>, 136 F.3d 695, 702 n.10 (10th Cir. 1998) (quoting <u>United Coal Cos. v. Powell Constr. Co.</u>, 839 F.2d 958, 966 (3d Cir. 1988); <u>F.D.I.C.</u>, 196 F.R.D. at 381.  The United States Supreme Court first articulated the work product doctrine in <u>Hickman v. Taylor</u>, 329 U.S. 495 (1947), and the doctrine was subsequently codified in Federal Rule of Civil Procedure 26(b)(3).  <u>See</u> <u>Holmgren v. State Farm Mut. Auto. Ins. Co.</u>, 976 F.2d 573, 576 (9th Cir. 1992).  Rule 26(b)(3) states, in pertinent part:

> (A) *Documents and Tangible Things*.  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But, subject to Rule 26(b)(4), those materials may be discovered if:

> > (i) they are otherwise discoverable under Rule 26(b)(1); and

23

>    (ii) the party shows that it has substantial
>    need for the materials to prepare its case
>    and cannot, without undue hardship, obtain
>    their substantial equivalent by other means.
>
>    (B) *Protection Against Disclosure*.  If the court
>    orders discovery of those materials, it must
>    protect against disclosure of the mental
>    impressions, conclusions, opinions, or legal
>    theories of a party's attorney or other
>    representative concerning the litigation.

Fed. R. Civ. P. 26(b)(3).  The purpose of the work product doctrine is to protect "written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties." Hickman, 329 U.S. at 510.

The Ninth Circuit has stated that "to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared by or for another party or by or for that other party's representative." In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.), 357 F.3d 900, 907 (9th Cir. 2004) (citations and quotation marks omitted) (alteration in original).  To the extent that the requested documents contain purely factual information and do not contain the mental impressions, conclusions, opinions, or legal theories of counsel, the work product doctrine does not apply.  Cf. Lectrolarm Custom Sys., Inc. v. Pelco Sales, Inc., 212 F.R.D. 567, 571 (E.D. Cal. 2002) (denying Lectrolarm's motion

24

to compel because Lectrolarm made the underlying request for documents "not to obtain factual information about the matters at issue but rather to discover the thoughts, opinions and strategy of its opponent").

Defendants are correct in noting that communications with experts retained solely for consultation and not to testify in litigation are generally protected by the work product doctrine and are not discoverable.  See Fed. R. Civ. P. 26(b)(4)(B).

Communications with retained experts who are anticipated to testify in litigation are not, however, protected by the attorney-client privilege.  See Fed. R. Civ. P. 26(a)(2)(B)(ii), (b)(4)(A).  Such communications may be protected by the work product doctrine provided that these communications contain the attorneys' impressions, strategies and other thought processes which this doctrine protects.  See Fed. R. Civ. P. 26(b)(3)(B).

C.   **Award of Defendants' Attorney's Fees**

When a court denies a motion to compel discovery, the court

> must, after giving an opportunity to be heard, require the movant, the attorney filing the motion, or both to pay the party or deponent who opposed the motion its reasonable expenses incurred in opposing the motion, including attorney's fees.  But the court must not order this payment if the motion was substantially justified or other circumstances make an award of

expenses unjust.

Fed. R. Civ. P. 37(a)(5)(B).  This Court finds that award of
Defendants' expenses incurred in opposing the Motion to Compel
would be unjust because this Court did not rule that Defendants
properly asserted the attorney client privilege and work product
doctrine as to all of the withheld documents.  Further, although
the Motion to Compel was premature, this Court utilized the
Motion to Compel to provide guidance to the parties for their
future use in their review of the documents subject to
Plaintiff's First Request for Production of Documents.
Defendants' request for attorney's fees and costs incurred in
opposing the Motion to Compel is therefore DENIED.

## II.  **Motion for Protective Order**

The subpoenas and notices of depositions upon written
interrogatories at issue in Defendants' Motion for Protective
Order primarily address the same areas of inquiry at issue in
Plaintiff's Motion to Compel.  Based on this Court's ruling on
the Motion to Compel, this Court finds that the Motion for
Protective Order is moot.  The parties may revisit the issues
addressed in the Motion for Protective Order after Defendants
respond to Plaintiff's First Request for Production of Documents.
Defendants' Motion for Protective Order is therefore DENIED
WITHOUT PREJUDICE.

## CONCLUSION

On the basis of the foregoing, Plaintiff's Motion to Compel Production of Documents, filed May 5, 2009, is HEREBY DENIED WITHOUT PREJUDICE.  Defendants' request for attorney's fees and costs incurred in opposing the Motion to Compel is also DENIED.  The Court directs Defendants to: 1) review and revise their privilege log in light of the Court's guidance in the instant order; and 2) respond to Plaintiff's First Request for Production of Documents, including the production of a revised privilege log, by **August 14, 2009**.

Defendants' Motion for Protective Order, filed May 1, 2009, is also DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, July 15, 2009.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge


**METZLER CONTRACTING COMPANY LLC, ET AL. V. ELLE STEPHENS, ET AL; CIVIL NO. 07-00261 LEK; ORDER DENYING MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND DENYING DEFENDANTS' MOTION FOR PROTECTIVE ORDER**